mind with it. Mr. Hulse, you're ready. We can take a break, but I suspect you're ready. Ready to go, Judge Logan. Thank you, and may it please the court again. So I'd like to start, Judge Logan, right where you left us, which is about the difference between the set of plaintiffs, military contractors, who are supporting U.S. military operations in the war on terror, whether it's in Iraq or Afghanistan. They are obviously much more intimately tied to the military procurement process. What they are contending, though they were less than clear in the district court, what they're contending more clearly on appeal is that they got the combat arms earplugs through the military, through working hand-in-glove with the military. So what we have here is a situation where they're getting the military issue combat arms earplugs. The factual scenario is that the military has instructed 3M not to provide individual warnings with the combat arms earplugs that are provided to the military because the military has undertaken responsibility for training and warnings, including in this wallet card that it issued to GIs. So what we have here is I think a factual scenario that is more clearly falling under, acting under, and falls equally under the colorable government contract defense. The plaintiffs have argued in their couple things before you continue with the main argument. It looks to me that a remand would be required if you're unsuccessful in Graves and Hall because there are civilian plaintiffs in the Copeland cases as well, number one. And number two, to the extent there are military procurement plaintiffs who satisfy the federal officer removal provision, those would be transferred to the MDL? That's correct, Judge Loken. The way I see this playing out is a remand would be an opportunity if that's how this goes. There would be an opportunity for district court to sever the ordinary civilian plaintiffs from the military contractor plaintiffs and then the military contractor plaintiffs would clearly be transferred to the MDL. Thank you. So there's been an argument in the plaintiff's papers on appeal that the military scenario was somehow waived in the district court and we've been clear and explained in our papers how we addressed both alternative scenarios that are presented by military contractors. One, it's sort of that Glasgow scenario where they get the combat arms directly from the military and alternatively where they're buying the packaged or blister packaged combat arms at the military PX. And I want to emphasize again that that blister packaged product, which was contested in the Graves and Hall appeal that we just heard, is a product that was meant for sale at the military PX. At the addendum page 130, rather appendix page 130, as one can see, the product blister pack is labeled for the military. It's labeled for sale to the military. So that's government contractor and I'd like to focus the rest of my time on the other arguments that we haven't talked about so far. There's combatant activities, which is an alternative basis for 1442 jurisdiction. Our problem with the district court is that the district court imported a set of restrictions on the combatant activities exception that just don't find a basis in case law. For example, it imported a requirement that the combatant activities exception only apply to offensive weapons like missiles and firearms. That simply isn't in the case law and it doesn't make sense. Protective equipment, earplugs, bulletproof vests, Kevlar helmets are absolutely just as much a part of combat operations and combatant activities as firearms are. It's a distinction that doesn't make any sense. The other distinction that the district court improperly read or the requirement that the district court improperly read in, is that the product must somehow be either manufactured on the battlefield or deployed on the battlefield. That also doesn't reflect the reality of military procurement. Whether it's firearms or missiles or whatever, they are manufactured stateside. They are shipped overseas for the use of GIs, for the use of Marines, and for the use of military contractors. So that's also a requirement that was imposed by the district court that doesn't find support in the case law. Finally, there's the issue of command authority and this requirement that the district court found that it can't actually be operating on the battlefield at the direction of military authority that, as the plaintiffs have argued, that it be subject to court's marshal and so forth. Again, this does not find support in the case law. We'd ask this court to follow the DC circuit's holding in Saleh, which requires not that there be integration into the command structure, but simply that military had a, it's like the government contract argument, had a back and provided substantive input on the product to the manufacturer. Counsel, Saleh, a very interesting panel divide, a split panel of the attorney general and the supreme court justice and a senior very respected judge, circuit judge, but Saleh was not a removal case. And it seems to me that this defense is one of those that's available, may well, I mean, plaintiffs argue it doesn't exist, it's been created, but if it exists, it's a federal defense, but it's not a removal, it does not create federal jurisdiction. It's, this fits right in the basis for removal with the government contractor defense. It works the same way. The colorable defense required under 1442 is exactly this kind of defense. And it's, it operates just like the government contractor defense. It's got similar policies behind it as well, namely the insulation of government decision-making, particularly in the context of wartime. In fact, they really are very similar defenses with very similar impact. And so it fits very nicely into the removal regime, the federal officer regime. Well, you know, that's easy to say, but that goes in the face of federalism principles that state courts are perfectly able and have jurisdiction to decide in the course of deciding claims under state law to deal with federal defenses. And if they mess them up, you petition for cert. So, so, you know, it's not, oh, well, this is all the same. It looks like the same defense. So let's just, let's just roll the federal jurisdiction removal statute into FOILs. It has, it has the same origin too, being an exception to the FTCA, Judge Logan, too. So this is why it would stand on the same footing. And I'd add, Your Honor, that as, as the Eighth Circuit said in Jack's case, the point of federal officer removal is to give a federal forum to this type of defense. There clearly is concurrent jurisdiction over the defense, but the 1442 reflects a preference or at least an allowance for a defendant to, to have that defense heard in federal court. And then, and then just to... If the defendant is a revenuer and the state, the states aren't real happy with, with the, you know, the history that's recounted in Watson. That's why the importance of person and acting under. Indeed, Your Honor. And Judge Logan, I'd add here, just coming back to where, where I started that the person, well, there's no dispute that person is met here and acting under is met as well. And even, even more clearly in the context of, of military provision to private contractors. That then brings me to the various enclave arguments. And, and here the district, the, the burden is different. We agree with that. This is 1441 removal. It's not the same colorable standard, but we, we presented evidence and the better side of it on each of the enclave arguments and the district court, in our view, put the thumb on the scale against, against the enclave argument. For just, for example, to take the Mr. Taylor who worked at U.S. Navy Battalion Center, he said in his jurisdictional discovery that he worked and wore the combat arms earplugs for five years at the U.S. Navy Battalion Center, which the Supreme Court itself has held as a federal enclave versus 13 months in Iraq. So the, whatever test one was wrong to find that federal enclave jurisdiction did not apply. Fort Bliss, which is the plaintiff in shot, is a similar situation. The plaintiff there said he got his earplugs at Fort Bliss in El Paso, Texas. There has been multiple cases along the way, including the Prejean case from the Fifth Circuit holding that Fort Bliss is a federal enclave. The district court should have federal enclave jurisdiction there. And finally, the Plum Brook reactor in the Aguirre case for Plaintiff Bertrand. I have to admit it was news to me that there was a NASA nuclear reactor in Ohio, but apparently there is. It's a federal enclave that was ceded by Ohio to the federal government during World War II. Can I ask about the session for just a moment? Because I saw, when I was looking through the documents, the session covered the original 113 acres where the Plum Brook may or may not be standing. So I've really got two questions. I can't figure out where the other 6,000 acres came from. And it looks like the statute requires us to find a retrocession is sufficient to establish the existence of the session or what. But I think that that's an iffy question. The second thing is, it could all be solved if we knew where that nuclear plant actually sits. Does it sit in the 113 acres or does it sit outside? Or is the record unclear? Right. No, the record is unclear, Judge Erickson. The evidence that we presented, clearly shows that the reactor was on the 113 acres. And what the district court said is, well, the plaintiff here, Mr. Bertrand, may, that's the district court's word, may have spent time at the other part of the acreage. But Mr. Bertrand himself said at Appendix 1238-40 that he spent five to six and a half years working at the reactor. So 83% of his total time by the district court's own conclusion was spent working at the reactor. So whether that's locus or predominant purpose, whatever test you use, the claim's on Federal Enclave. And the plant's clearly on the 113? That's the record evidence. It's clear to us, so. And we did present evidence of the retrocession, which in 2011 of the remainder of the property, which does, clearly does support an inference, a reasonable inference, that a session occurred in World War II. A little bit I have remaining for rebuttal. Very good. Mr. Gustafson. Thank you, Your Honors. And again, Dan Gustafson on behalf of the many plaintiffs and appellees in this Copeland set of cases. Let me just touch on Copeland, and I apologize, Judge Rolkin, I called it Coleman before, but I meant Copeland, and I just, my brain just didn't get it straight. So the Copeland cases deal with, some of them, I think there's 11, that deal with military contractors who were hired by the government, who receive the earplugs as part of their contract with the government to provide contractor services in various locations. And our view on this is that that doesn't sweep it within the purview of Boyle, because the military is voluntarily giving those earplugs to folks as part of their civilian contractor contract. They are just like civilian sales. They didn't receive any instruction. They didn't receive any warning. All they received were the earplugs as presumably as part of the contract between the company and the military to provide independent contractor services. At the very least, it seems to me that if there's a question about whether that falls under Boyle, that's a question that the district court should explore on remand if you see it that way. Now, with respect to this issue that's raised in terms of the combatant activities exception, let me start with a couple of main points. First of all, as you all know, the United States Supreme Court has never recognized the combatant exception, the combatant activities exception, to support federal jurisdiction. And on that basis alone, this court could say no to the issue of removal under combatant activities because the Supreme Court has never said so. Now, true enough, a few circuit courts have adopted that exception, but it's inconsistent and different from the Boyle exception in several ways. First of all, it arises under the Federal Tort Claims Act, of course, and in that situation, the combatant activities is limited to the United States. In fact, the statute 28 U.S.C. 2680 specifically, I'm sorry, 28 U.S.C. 2671 specifically excludes independent contractors. Congress has spoken on this issue and said that as a federal agency or a federal employer, independent contractors don't count in the definition, and that definition is in place in the combatant activities exception. And so, principles of federalism here suggest that the Eighth Circuit should not adopt this exception to the Federal Tort Claims Act. But secondly, the courts that have approved it, and I think, Judge, it was an interesting comment on Salev. There certainly was a panel of well-distinguished jurists, but if you look at Salev and Harris out of the Third Circuit and the KBR burn pit out of the Fourth Circuit, they are very, very different situations than what we have here. In Salev and Harris, you had people who were independent contractors who were actually integrated into the military force itself. They were interrogating prisoners in, I believe it was in Iraq, perhaps, and in Afghanistan, but they were like shoulder to shoulder with military folks doing interrogations of people that were suspected to be seeking to harm the United States. So, they were literally stepping in the shoes of the military. They were clearly under the military command, and they were clearly in the arena of war. In the KBR burn pit, you have the same situation. KBR is providing various services to the government, right shoulder to shoulder with the military. They are taking care of waste, various things like that. Here, we have a situation where 3M is suggesting that because they sold a product to the military, and that that product eventually was given to soldiers, and that those soldiers eventually found their way to a combatant that somehow they should be immune from liability for the sale of that product alone. There is no record evidence whatsoever that 3M was ever involved in combatant activities or in the arena as I have described it before, and there is no evidence in the record whatsoever that the military retained command authority over 3M's decision making with respect to the earplugs. It is the antithesis of the cases that have adopted the combatant activities, and you should reject the expansion that they suggest here. As I said, in our view, this is something the Supreme Court should adopt if it is to be adopted at all, but I will acknowledge to your honors that the Salem, and the Harris, and the KBR burn pit, those cases make sense to me. Where the government puts some independent contractor into the shoes of a military soldier, it seems like that person should be immune from liability. It is not much different than the Filarski case, which is talked about in the KBR burn pit, where the private attorney was side by side at the behest of the government in the 1983 case, and the Supreme Court said, hey, when they are working, whether they are full-time employees or contractors or whatever, they should get governmental immunity when they are doing the job of the government. Nothing here suggests that 3M is doing the job of the government. What they are doing is, at the very most, what they are doing is selling products to the government, we say under no contract, we say under no specifications, and I don't want to confuse that, but to the extent that they have any sort of preemption argument here, it rises or falls under Boyle. Boyle was designed, the preemption exemption that the Supreme Court created in Boyle was for the very otherwise by themselves. True enough, there are some cases that adopt this notion that if you supply sophisticated missiles to the government, somehow you should be immune because you are helping the combat and activities. My view is that those cases are decided wrongly. Those cases should have been decided under Boyle if Boyle applied, because suppliers are clearly covered under the Boyle preemption exception, and to expand those suppliers who do nothing more than supply products under the combatant activities does an injustice to the combatant activities exception. Remember, as the KBR Burn Pit case said, the whole purpose of the combatant activities exception in the Federal Tort Claims Act is to foreclose state regulation of the military battlefield conduct and decisions. There is nothing about whether the government sold or didn't sell or gave soldiers a warning on earplugs. That has nothing to do with the military's battlefield conduct and decision-making, and for good reason, you could see why that decision-making process, that split-second decision-making process on the military battlefield would be something that would fall under the origins of these exceptions, as Justice Scalia said in Boyle where he said, sometimes there is a uniquely federal interest that requires us to take back a little bit of the state's rights to protect the federal government's interest. Here, nothing about the combatant activities exception fits that bill, and you should reject it as to the facts of this makes some sense in certain circumstances, and I wouldn't wholesalely reject it, but I would say under the facts of this case, there is no basis for it because 3M was never integrated into combatant activities, and they were never under the end of the chain of supply. Now, with respect to the federal enclave defense, a couple things that are important. First of all, this is not the same standard. This is the standard that this court announced in the PremPro litigation in 2010. If there's any doubts at all with respect to whether removal is appropriate, those doubts should be resolved against removal, and the case should be remanded. That defendant has the burden of demonstrating that there is a federal jurisdictional basis, and as you mentioned earlier, Judge Loken, that's principles of federalism, which we have been taught since law school. Those things that are specifically allocated to the federal courts are such that jurisdiction exists, and the rest is for the state. Federal enclave here is clearly a concurrent jurisdiction situation, so it's not an exclusive federal jurisdiction, and it's governed by 40 U.S.C. section 3112, and that statute has three requirements. It requires that you demonstrate that the federal government has acquired land in a state with the consent of the state legislature, and the federal government accepted it by filing an appropriate notice. 3M has not demonstrated that with respect to the federal courts, and it can't show the three requirements under 40 U.S.C. section 3112. Section 3112C says courts should conclusively presume that no federal enclave jurisdiction exists, so here we have a situation where the statute sets out the requirements and then says to the federal courts, if you don't have that evidence satisfactory in line, you should conclusively presume that no federal enclave jurisdiction exists. Now, with respect to the Bertrand and the NASA Plum Brook facility, I think what my colleague said is correct. They think the evidence shows that he was working on the 113 acres that constituted the nuclear facility, but it's not ever properly ceded to the federal government or that they accepted it. We do have this document, which 3M puts in the record, that suggests that there was a reseeding of the property back to the state, but that doesn't tell us anything about whether section 3112 was actually complied with, and that's a necessary requirement. At best, it leaves us with an ambiguity, and there, both PREMPRO and the statute 40 U.S.C. 3112C itself say in that situation, you've got to find against federal jurisdiction because the ambiguity doesn't work for you. The same is true with respect to the remaining federal enclaves, with the exception of Taylor. In Taylor, the district court found that while that's a federal enclave, the Naval Battalion Center is a federal enclave, the vast majority of his injuries occurred in Iraq. He alleges that his hearing loss from the 3M earplugs was affected him in Iraq and not at the Navy Battalion Center, and so courts have adopted the non-enclave injuries increase, the federal government's interest in enclave injuries decreases. Judge Thunheim at the district court made that factual finding, and that finding is supported by the evidence in the record, and that should be sufficient for you to find that remand was appropriate. There's one last issue in Copeland, and that's this admiralty issue. I'm not going to go into it. It's briefed well in the papers. It's clear to me that the savings to suitor clause, which has been the subject of much debate in many U.S. Supreme Court opinions, including Lewis and Clark taking up this court's opinion, the savings to suitor clause saves the state law admiralty claims if they choose to file them in state court, particularly where they have made a jury request. The overwhelming majority of cases have concluded that the 2011 amendment did not change that. The one case that defendants rely on, the Ryan case, was essentially overturned by the same court in Sanders, and there's just no basis here to find that the savings to suitor clause doesn't apply to Mr. Taylor. I'm sorry, Mr. Schott. That's all I have, Your Honors. If you don't have any further questions, I will sit down and let you go on with your day. Once again, I appreciate you taking the time to see me via Teams, and I look forward to seeing you all in person. We would ask that the district court's decisions be affirmed in all respects for the reasons that we argued today and in our briefs. Thank you. Thank you, Mr. I'll give you a minute. Great. Is that better? I think we still got a little while. Okay, go ahead for a moment. The key is after the 2011 amendments, the form defendant exception removal is limited to require that when you've got a home defendant or a form defendant seeking to remove under admiralty or maritime jurisdiction, that so long as there is diversity as an additional basis for removal, the case can go to federal court. That's what Romero says. The form defendant rule, as the Eighth Circuit has held, is a procedural rule, not a jurisdictional rule. So long as the other requirements of diversity are met, in addition to this being a maritime claim, the case is removable after the 2011 amendments. So that's maybe a complicated thing to do in a minute, but thank you for the panel's time.